IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )
                                    )
v.                                  )        No.  06-10258-01, 02, 03-WEB
                                    )
NOELIA GARZA-SOTELO,                )
BEATRIS VASQUEZ, and                )
MIGUEL RUBALCAVA-ROACHO,            )
                                    )
                Defendants.         )
                                    )

**<u>Memorandum and Order</u>**

This matter came before the court on September 6, 2007, for a hearing on the defendants'

Motion to Suppress Evidence (Docs. 43 & 45).  At the outset of the hearing, counsel for Ms.

Vasquez and Ms. Garza announced that their clients intended to plead guilty later in the day and

would not be participating in the motion.[1]  Accordingly, Mr. Rubalcava was the only defendant

to proceed with the motion to suppress.

    I. *Facts*.

    The court finds the following facts from the evidence presented at the hearing.  On

October 1, 2006, at about 1:00 p.m., City of Pratt (Kansas) Police Officer Wayne Cline was on

duty in a marked patrol car on U.S. Highway 54, which runs through the City of Pratt.  The road

is referred to as 1st Street in the City of Pratt.  Cline was on the west edge of town when a rather

_____

[1] The court was notified of these defendants' intention the day prior to the September 6th
hearing.  Accordingly, the court scheduled Rule 11 hearings for these two defendants for the
afternoon of September 6th.  On the afternoon of the 6th, however, the parties requested, and the
court granted, a continuance of the Rule 11 hearings.

large recreational vehicle ("RV") traveling eastbound caught his attention.  Cline testified that he noticed there was a young Hispanic female driving the RV and a young Hispanic male was seated in the front passenger seat next to her.  Cline saw in his rear view mirror as the vehicle passed that it had a California license plate.  Cline testified that in his experience, it was unusual for individuals that young to be driving such an RV.  He testified that his suspicion was aroused because of the young age of the occupants, the way the female driver looked at him, the out-of-state license plate, and the fact that the RV was not towing a vehicle.  He said in his experience it was common for RV's such as this to tow another vehicle.  Cline testified that he noticed the occupants were Hispanic but that this did not factor into his suspicion.

Cline turned his car around and followed the RV.  It turned into the parking lot of a "Kwik Shop" gas station/convenience store but did not pull up to the gas pumps.  Cline pulled his car over onto an access road next to U.S. 54 to watch the RV.  He saw two women and a man get out and stand outside of the vehicle.  He testified the individuals did not go in the convenience store or use the trash cans or gas pumps.  Cline said one of the women looked directly at him while he was parked on the access road.  He testified that the three individuals stayed in the parking lot for about ten minutes before getting back in the RV.   When they got back in, the older of the two females was driving instead of the younger one.  Cline followed the RV up the road as it went through town eastbound on U.S. 54.

Cline testified that on the east side of town, at the junction of U.S. 54 and Kansas Highway 61, the four lane road ends and U.S. 54 becomes a two-lane road.  Facing eastward on U.S. 54, the right-hand lane is marked as a "right-turn only" lane as one approaches the intersection.  The left-hand lane continues on through the intersection as U.S. 54.  The Pratt city

limits, and consequently officer Cline's jurisdiction, extend only a short distance to the east beyond the intersection, a matter of 200 yards or so.  Cline testified that the RV was in the right-hand, right-turn only lane, approaching the intersection, when he saw it signal a left turn.  He said the RV turned right, however, into the parking lot of what used to be a Wal-Mart store. Cline said he turned on his emergency lights at that point and stopped the RV in the parking lot. He testified that a right-hand turn while signaling the other direction was a violation of a Pratt city traffic ordinance.

The rest of the encounter is largely undisputed insofar as the instant motion is concerned. Cline testified that he spoke to the driver, Beatris Vasquez, and obtained documents from her. When Ms. Vasquez exited the vehicle on the passenger side, Officer Cline could smell a strong odor of air freshener coming from the vehicle.  Ms. Vasquez produced a Texas driver's license, insurance papers, and a purported bill of sale stating that the vehicle had been sold by Ralph and Mary Garcia to Ms. Vasquez.  The license tag was registered to Ralph and Mary Garcia of Chula Vista, California.  Cline ran a check and determined that Ms. Vasquez' Texas driver's license had been revoked.   Cline subsequently checked the Texas driver's license of the other woman he had previously seen driving, Noelia Garza-Sotelo, and found out her license was suspended. Ms. Vasquez identified Ms. Garza as her daughter, and said they were going to Wichita to see Vasquez' son.  She identified the man with them as Noelia's boyfriend, although she did not know his name.  The man, defendant Miguel Rubalcava- Roacho, produced a Mexican identification card, but did not have a driver's license.  Cline could see when Vasquez stepped out of the motor home that the floor of the vehicle appeared to have been raised, and there were three steps down from the RV instead of what he said was the normal two steps.  He could also

see new carpeting in the front passenger area of the floor and what appeared to be fresh glue around the edges of the carpet.

Cline arrested Ms. Vasquez and Ms. Garza for driving without a valid license.  He did not arrest Mr. Rubalcava.  Other officers were called to the scene, as well as a tow truck, and pursuant to Pratt Police Department policy an inventory search of the RV was conducted.  One of the officers at the scene looked under the RV and saw what appeared to be a false compartment.  The RV was too big to be towed, and so it was driven to the Pratt Law Enforcement Center by one of the tow truck operators.  The defendants were all transported to the Center as well.  While the RV was at the center, a trained drug-detecting dog and handler were called in, and a dog sniff was conducted around the exterior of the vehicle.  The dog gave a strong positive alert to a front panel of the vehicle close to the location of the false compartment.  Officers then removed the carpet from the floor above this area, drilled a hole through the plywood underneath, and inserted a scope to see what was in the compartment.  They could see a blue nylon bag in the compartment.  At that point, officers obtained a search warrant, and they subsequently discovered a large quantity of what appeared to be controlled substances in the compartment.

At the suppression hearing, defendant Rubalcava called co-defendant Beatris Vasquez to testify.  Ms. Vasquez' counsel was present at the hearing and objected to some of the questions on Fifth Amendment grounds, although counsel did not object to her testifying about the circumstances of the traffic stop.  Ms. Vasquez testified, among other things, that while they were at the Kwik Shop, all three of the defendants went inside the store to use the restroom and purchase something to eat.  She acknowledged that she saw the police officer across the street,

and that she subsequently saw him in the rear view mirror following her through town.  She said that when she got to the other end of town, she ended up in the right-turn only lane.  She wanted to go straight through the intersection, so she turned on her left turn signal while she was stopped at a traffic light waiting.  She said that she then turned right into the parking lot, however, because she saw the officer's emergency lights on behind her.  She said she would not have turned right except that she saw his lights on.  She testified that when he approached the car, he said to her, "Which is it, right or left?"  Upon cross-examination by counsel for the Government, Ms. Vasquez conceded that she lied to the officer during the stop, and testified that she did so because that is what defendant Rubalcava had told her to say if they got stopped.

II. *Motion to Suppress*.

In the written motion to suppress filed by the defendants, they asserted that the officer's stop of the RV was "pretextual," apparently because of his decision to follow the motor home through town and "because he stopped the motor home with the intent to search for evidence unrelated to traffic matters."  Doc. 44 at 5. The motion further argued that the search of the motor home was not justified under the search incident-to-arrest doctrine of *New York v. Belton*, 453 U.S. 454 (1981).  At the suppression hearing, however, counsel for Mr. Rubalcava argued instead that the initial traffic stop was invalid because the officer did not have probable cause to believe a traffic violation had occurred when he stopped the motor home.  Defendant argued that the officer caused Ms. Vasquez to turn right into the parking lot by turning on his emergency lights.  Defendant thus argued that he was unlawfully seized, and that all of the evidence subsequently found by the officers was the fruit of the unlawful seizure and must be suppressed. In response, the Government asserts that defendant Rubalcava lacks standing to object to the

search of the RV.  It further contends that the officer's testimony that he observed a traffic violation was more credible than Ms. Vasquez' assertion that she only turned right because she saw the officer's emergency lights flashing.  The Government argues that the traffic stop was thus supported by probable cause, and that the defendant has shown no basis for suppression of the evidence.

III. _Discussion_.

Defendant Rubalcava has not shown any property or possessory interest in the RV or the property seized therein; he thus lacks standing to directly challenge the search of the RV.  *See Rakas v. Illinois*, 439 U.S. 128 (1978).  Nevertheless, as defendant correctly points out, the Supreme Court has recently confirmed that a passenger in a traffic stop is "seized" for purposes of the Fourth Amendment[2] and thus has standing to challenge the constitutionality of the traffic stop.  *Brendlin v. California*, 127 S.Ct. 2400 (2007).

Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment.  *Brendlin*, 127 S.Ct. at 2406.  A traffic stop is reasonable under the Fourth Amendment if a police officer has a reasonable, articulable suspicion the driver has committed a traffic violation.  *United States v. Callarman*, 273 F.3d 1284, 1287 (2004).  Once an officer observes a traffic violation, any prior subjective motivations he had for conducting a traffic stop of the vehicle have no bearing on whether the stop was reasonable

---

[2] The test set forth by the Court for determining whether a seizure occurred is whether a reasonable person in the passenger's position would have believed himself free to terminate the encounter between the police and himself.  *Brendlin*, 127 S.Ct. at 2407.  The circumstances of the instant case make clear that all of the defendants, including Mr. Rubalcava, were detained in the traffic stop.  *Cf. Id*. at 2406-07 ("any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission.").

under the Fourth Amendment.  *United States v. Cervine*, 347 F.3d 865, 870 (10th Cir.2003);

*Whren v. United States*, 517 U.S. 806, 813 (1996) ( "Subjective intentions play no role in

ordinary, probable-cause Fourth Amendment analysis.").  Thus, the reasonableness of the traffic

stop under the Fourth Amendment depends on whether Officer Cline observed a traffic violation

before stopping the RV.[3]

    After weighing the credibility of the witnesses, and based upon a preponderance of the

evidence, the court concludes that the officer more likely than not observed a traffic violation

before stopping the RV.  *See United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir. 1994)

(preponderance of evidence standard generally applies on motion to suppress).  The question is a

difficult one, because the court found the testimony of both Officer Cline and Ms. Vasquez to be

generally credible, even though their testimony directly conflicted on the question of whether

Ms. Vasquez turned right in the RV before the officer turned on his lights, as well as on one or

two other points.

    Defendant argues that Ms. Vasquez "has no stake" in the hearing and thus had no motive

to fabricate the sequence of events, while at the same time arguing that the officer's testimony is

questionable because he followed the RV all the way through town with no justifiable basis for

suspicion and then stopped the vehicle just before it left his jurisdiction.  The question of what

each witness has at stake in the hearing is somewhat more complicated than counsel suggests,

however, and in the end sheds very little light on the credibility of the witnesses.  It is undisputed

---

    [3] The Constitutional basis for objecting to intentionally discriminatory enforcement of the
laws is the Equal Protection Clause rather than the Fourth Amendment.  *Whren*, 517 U.S. at 813.
Defendant has not argued that the officer's conduct violated his right to equal protection of the
laws, nor has he produced credible proof of such a violation.

here that Ms. Vasquez made false statements to the officer in the course of the roadside

detention.  Whether that was because she was hoping to avoid being caught or wanted make

money from the enterprise,  or because she wanted to help out her daughter, or because she had

some fear of harm if she did not do as she had been told, the court cannot say.  Nor can the court

say precisely what motives factor into her present testimony.  After hearing Ms. Vasquez testify,

the court does not doubt that she believes she made a right turn because the officer's lights were

on.  But the court concludes that she more likely than not moved the RV to the right on the

roadway and at least began a right-hand turn before the officer turned on his lights.  In this

regard, the court notes that Ms. Vasquez was likely nervous when the officer was behind her, she

was driving an approximately 32-foot motor home, and she was aware that she was in a right-

turn only lane.  Based on the evidence presented, the court finds that the officer more likely than

not saw what he reasonably believed to be a traffic violation before activating his emergency

lights.  Ms. Vasquez conceded in her testimony that when the officer first approached her, he

asked, "Which is it, right or left?" Also, there is no evidence that during the stop Ms. Vasquez

disputed the officer's assertion that she had made an improper turn.  The officer testified that the

vehicle's turn violated a city ordinance requiring a vehicle to indicate an intention to turn by

flashing lights showing to the front and rear of the vehicle on the side of the vehicle to which the

turn is to be made.  The court also notes that the RV's rightward movement while signaling left

would likely be a violation of state traffic laws.  *Cf.*  K. S.A. § 8-1548 (providing that "[n]o

person shall turn a vehicle or move right or left upon a roadway unless and until such movement

can be made with reasonable safety, nor without giving an appropriate signal in the manner

hereinafter provided," and that "a signal of intention to turn or move right or left when required

shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.").  Accordingly, the court concludes that the initial traffic stop was reasonable under the Fourth Amendment.

Defendant Rubalcava does not expressly challenge the lawfulness of the events after the stop.  After the initial stop, the officer was almost immediately confronted with facts giving rise to a reasonable suspicion of drug trafficking, including the strong odor of air freshener from the vehicle, the new carpet and glue spots on the floor, the raised flooring, and the fact that Ms. Vasquez apparently did not know the name of the man traveling with her.  He was also quickly confronted with probable cause to arrest the two women for driving without a valid driver's license.   The absence of a licensed driver certainly made the impoundment of the vehicle reasonable, and the evidence shows that the inventory search of the vehicle was conducted pursuant to City policy and was reasonable.  The totality of the circumstances, including the observance of what appeared to be a hidden compartment under the vehicle and the subsequent alert by a trained drug-detecting dog later gave rise to probable cause for a search of the vehicle. As such, the court concludes that the search of the vehicle was reasonable under the Fourth Amendment.

IV.  _Conclusion_.

Defendants' Joint Motion to Suppress (Docs. 43) is DENIED.  Defendant Beatris Vasquez' Motion to Suppress Statement (Doc. 45) is DENIED as moot.   IT IS SO ORDERED this  10th   Day of September, 2007, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge

9